\*\* E-filed August 3, 2011 \*\*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DANIEL SULLIVAN, | No. C11-02973 HRL |
| Plaintiff, | **ORDER GRANTING ARAMARK AND PACHECO'S MOTION TO DISMISS** |
| v. | |
| ARAMARK UNIFORM AND CAREER APPAREL, INC., et al., | [Re: Docket No. 9] |
| Defendants. | |

## BACKGROUND

For nearly 18 years, Dan Sullivan ("Sullivan") worked for Aramark Uniform & Career Apparel, Inc. ("Aramark"), most recently as a Route Sales Representative ("RSR"). Docket No. 1 ("Notice of Removal"), Ex. A ("Complaint") ¶ 9. In this position, Sullivan delivered apparel, uniforms, tablecloths, laundry, and other items to Aramark customers. Id. At all relevant times, Sullivan's employment as an RSR was covered by a collective bargaining agreement between Aramark and International Brotherhood of Teamsters, Local 853 ("Teamster Local 853") (the "Master Agreement"). Id. ¶ 10, Ex. A.

According to Sullivan, he suffered several instances of unfair and illegal treatment by Aramark, particularly through one of its General Managers, Bill Pacheco ("Pacheco") (collectively, the "Aramark Defendants"), in violation of the Master Agreement and California law. He alleges that on August 26, 2009, Pacheco ordered him to transport improperly-contained hazardous

1  material, and, when he refused to do so because it violated Aramark training and policies, Pacheco
2  suspended him for three days in retaliation. Id. ¶ 14. Despite being "exonerated and reinstated with
3  full back pay" at a subsequent grievance hearing, Pacheco retaliated against him again by removing
4  an account from his route, in violation of § 5.3 of the Master Agreement. Id. He also alleges that
5  Pacheco was upset with him again when on September 2, 2009 he reported to Cal OSHA "lapses
6  and mishandling of blood-borne pathogens and biohazard materials" at Aramark. Id. ¶ 15.

7        Sullivan further alleges that in January 2010 Pacheco instructed him to remove all Aramark
8  products from a San Jose restaurant due to nonpayment. Id. ¶ 18. Sullivan did so, unaware that
9  another Aramark manager had come to an agreement with the restaurant not to remove the products.
10 Id. As a result, the restaurant owner was upset with him. Id. Later that month, Sullivan discovered
11 that the same restaurant had more Aramark products than he had supplied. Id. ¶ 19. He reported this
12 to his supervisor, and again he was instructed to remove them. Id. Upon receiving a required COD
13 payment in February 2010, Sullivan again supplied the restaurant with Aramark products. Id. ¶ 21.
14 Thereafter, the restaurant notified Aramark that it wished to cancel its account with Aramark
15 because Sullivan was rude when collecting the COD payment, refused to take payment in cash, and
16 used a racial epithet toward one of its employees on February 17, 2010. Id. Based on these
17 allegations, on February 24, 2010, Pacheco suspended Sullivan without written notice in violation of
18 § 28.3 of the Master Agreement. Id. ¶ 22. Sullivan alleges that Pacheco then forged a note,
19 purportedly signed by a restaurant employee, stating that the employee witnessed him "yelling
20 profanities" on February 17, to bolster the case against him. Id. ¶ 23.

21       On March 9, 2010, "because he had been suspended without written notice or provided
22 grounds or basis," Sullivan filed a grievance pursuant to § 28 of the Master Agreement. Id. ¶ 25.
23 Pacheco fired him the next day. Id. ¶ 26. Michael Amaral ("Amaral"), an agent and employee of
24 Teamsters Local 853, then filed a grievance on behalf of Sullivan, protesting his termination and
25 requesting a hearing. Id. ¶ 27. On March 18, 2010, a meeting took place pursuant to § 28.1(a) of the
26 Master Agreement, but the matter was not resolved. Id. ¶ 28. Thereafter, on April 1, 2010, a "panel"
27 calling itself a "Board of Adjustment" (later described in a letter from Pacheco as a "grievance
28 panel" pursuant to the Master Agreement) was convened to hear the matter. Id. ¶ 29. Apparently, the

1    members of the panel proposed a settlement to Sullivan, which he rejected. Id. ¶ 30, 33. He then told
2    Amaral and Rose Aloise ("Aloise"), another agent and employee of Teamster Local 853
3    (collectively, the "Union Defendants"), that he wanted to appeal the panel's decision pursuant to the
4    Master Agreement, but the Union Defendants refused to help him because "they did not want to
5    spend the money on an attorney to appeal to arbitration, and [because] they 'always lose' at
6    arbitration anyway." Id. ¶ 31.

7    Finally, on June 26, 2010, Pacheco wrote a letter to Sullivan making clear that his
8    employment with Aramark had been "deemed severed." Id. ¶ 34.

9    Roughly nine months later, on March 9, 2011, Sullivan filed the instant action in Santa Clara
10   County Superior Court. See Complaint. The Aramark Defendants removed the action to this Court
11   on June 16, 2011. Notice of Removal. The Union Defendants joined the removal, and answered the
12   complaint. Docket Nos. 5, 8.

13   The Aramark Defendants, however, moved to dismiss Sullivan's complaint on several
14   grounds. Docket No. 9 ("Motion"). Sullivan opposed their motion. Docket No. 20 ("Opp'n"). Oral
15   argument was heard on August 2, 2011.

## LEGAL STANDARD

17   On motion, a court may dismiss a complaint for failure to state a claim. FED. R. CIV. P.
18   12(b)(6). The federal rules require that a complaint include a "short and plain statement" showing
19   the plaintiff is entitled to relief. FED. R. CIV. P. 8(a)(2). The statement must "raise a right to relief
20   above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 55 (2007). However, only
21   plausible claims for relief with survive a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. ___, 129
22   S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). A claim is plausible if its factual content "allows the
23   court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at
24   1949. A plaintiff does not have to provide detailed facts, but the pleading must include "more than
25   an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 1950.

26   In deciding a motion to dismiss, the court is ordinarily limited to the face of the complaint.
27   Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). The factual
28   allegations pled in the complaint must be taken as true and reasonable inferences drawn from them

must be construed in favor of the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996); Mier v. Owens, 57 F.3d 747, 750 (9th Cir. 1995) (citing Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987)). However, the court cannot assume that "the [plaintiff] can prove facts which [he or she] has not alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (citing Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994)), amended on other grounds by 275 F.3d 1187 (9th Cir. 2001).

"A court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). "'Four factors are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment.'" Ditto v. McCurdy, 510 F.3d 1070, 1079 (9th Cir. 2007) (internal citations omitted). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995). An amendment would be "futile" if there is no set of facts can be proved which would constitute a valid claim or defense. See Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988).

**DISCUSSION**

1. Plaintiff's First and Seventh Causes of Action for Breach of Contract and Breach of Duty of Fair Representation

   A. Against Aramark and the Union Defendants

"It has long been established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement." DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 163 (1983) (citation omitted). "Ordinarily, however, an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." Id. at 163-64 (citations omitted). "Subject to very limited judicial review, [the employee] will be bound by the result according to the finality provisions of the agreement." Id. at 164 (citations omitted). However, "[t]his rule works an unacceptable injustice when the union

4

representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." Id. "In such an instance, an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding." Id. (citations omitted).

"Such a suit, as a formal matter, comprises two causes of action" and is characterized as a "hybrid" action under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).[1] Id. at 164-65. The claim against the employer is based on § 301(a) of the LMRA, which authorizes suits between employers and labor organizations for breach of a collective bargaining agreement. Stevens v. Moore Bus. Forms, Inc., 18 F.3d 1443, 1447 (9th Cir. 1994). "A suit for breach of a collective bargaining agreement is governed exclusively by federal law under section 301." Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 997 (9th Cir. 1987) (citing Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 23 (1983)). Indeed, "[t]he preemptive force of section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement . . . ." Id. (citations omitted).

The claim against the union is predicated on the "statutory duty of fair representation." Id. (citing Vaca v. Sipes, 386 U.S. 171, 177 (1967)). "The duty of fair representation is inferred from the union's exclusive authority under the National Labor Relations Act ["NLRA"], 29 U.S.C. § 159(a), to represent all employees in a bargaining unit" and "requires a union to act fairly when dealing with an employer on behalf of a member." Moore v. Local Union 569 of the Int'l Bhd. of Elec. Workers, 989 F.2d 1534, 1541 (9th Cir.1993), cert. denied 510 U.S. 1117 (1994).

The Aramark Defendants first argue that Sullivan has brought a "hybrid action" and so his first and seventh causes of action for breach of contract (the "Master Agreement") and for breach of

---

[1] This is because the two claims are "inextricably interdependent." DelCostello, 462 U.S. at 164. "'To prevail against either the company or the Union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.'" Id. at 165 (quoting United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 66-67 (Stewart, J., concurring in the judgment)). "The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." Id. "The suit is thus not a straightforward breach of contract suit under § 301 . . . but a hybrid § 301/fair representation claim, amounting to 'a direct challenge to the private settlement of disputes under [the collective-bargaining agreement].'" Id. (quoting Mitchell, 451 U.S. at 66 (Stewart, J., concurring in the judgment)) (internal quotation marks omitted).

5

the duty of fair representation are preempted under § 301 of the LMRA. See DelCostello, 462 U.S. at 163-65.[2] They are correct. These claims clearly allege a breach of the Master Agreement by the Aramark Defendants and the duty of fair representation by the Union Defendants. See Complaint ¶¶ 36-42, 72-80. As such, they are preempted and should be re-characterized as a "hybrid" claim under § 301 of the LMRA. See Young, 830 F.2d at 998 ("Federal law not only preempts Young's contract claim, but also supplants it with a federal claim."); Durbin v. Int'l Longshore & Warehouse Union, Local 52, No. C06-287JLR, 2006 WL 3097407, at *2 (W.D. Wash. Oct. 27, 2006) ("[Plaintiff's] unfair labor practice, breach of contract, and wrongful termination claims constitute a 'hybrid' section 301 claims under the [LMRA].") (citation and footnote omitted).

With Sullivan's first and seventh causes of action preempted, the Aramark Defendants also argue that they are barred by the applicable statute of limitations. As the Supreme Court made clear, a "hybrid" claim under § 301 of the LMRA is subject to a six-month statute of limitations. DelCostello, 462 U.S. at 169; see also Durbin, 2006 WL 3097407, at *2. Although there is some question as to when the limitations period began to run, see Eason v. Waste Management of Alameda County, No. C-06-06289 JCS, 2007 WL 2255231, at *5-6 (N.D. Cal. Aug. 3, 2007), Sullivan's complaint appears to have been untimely regardless of the date used because it was filed:

- one year after March 9, 2010, when Sullivan filed a grievance pursuant to § 28.3 of the Master Agreement "because he had been suspended without written notice or provided grounds or basis";

- eleven months after April 1, 2010, when the "panel" calling itself a "Board of Adjustment" heard Sullivan's grievance and when the Union Defendants allegedly refused to appeal the purported settlement offer; and

- nine months after June 26, 2010, when Pacheco wrote a letter to Sullivan stating that his employment with Aramark was "deemed severed."

---

[2] Sullivan did not address DelCostello in his opposition brief; rather, he cited a case that only involved a single claim by a union against an employer for breach of a collective bargaining agreement under § 301 of the LMRA. See UA Local 343 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Industry of U.S. & Canada, AFL-CIO v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1474 (9th Cir. 1995). That case, however, was not a "hybrid" action with both a breach of a collective bargaining claim and a breach of the duty of fair representation claim, so its statement that "[a]ctions brought under § 301 of the LMRA are governed by the relevant statute of limitations of the forum state, in this case, California's four-year period for breach of contract claims," while correct for a non-"hybrid" action, is inapposite to this case. See id.

1    Accordingly, Sullivan's first and seventh causes of action are dismissed.[3] But, because it is
2  not yet clear that he cannot allege facts to support tolling the statute of limitations, they are
3  dismissed without prejudice.[4]

   B. Against Pacheco

Sullivan's also brought his first cause of action against Pacheco individually. The Aramark Defendants argue that an individual employee cannot be made a defendant to a claim for breach of contract where that individual was not a signatory to the contract. Motion at 6 (citing Atkinson v. Sinclair Refining Co., 370 U.S. 238, 249 (1962)). But this is not so clear. First, the Court is not so sure that Atkinson stands for this point, as it involved whether union members could be liable for damages owed by the union. Second, a subsequent Ninth Circuit case, not cited by any party, suggests that a non-signatory to a collective bargaining agreement may be a party to a § 301 claim for breach of that agreement. See Painting & Decorating Contractors Ass'n v. Painters & Decorators Joint Comm., 707 F.2d 1067, 1070-71 (9th Cir. 1983), cert. denied, 466 U.S. 927 (1984) ("Other courts have interpreted § 301(a) jurisdiction to be limited to the actual signatories to the contract at issue. However, we do not give § 301(a) such a reading.") (footnote omitted). Sullivan ignored the Aramark Defendants' argument on this point, and, without more briefing, the Court will not reach this argument. Instead, the claim is dismissed without prejudice for the same reason as stated above with respect to Aramark.

2. Plaintiff's Second, Third, and Fourth Causes of Action for Age Discrimination and Retaliation

   A. Against Aramark

"[E]ven suits based on torts, rather than on breach of collective bargaining agreements, are

---

[3] Although Sullivan's seventh cause of action is only brought against the Union Defendants and they did not move to dismiss it, because the Court finds that it is preempted under § 301 of the LMRA, it is dismissed as well.

[4] The Aramark Defendants also argue that Sullivan's claim for breach of contract fails because, before he can proceed on it, he must first establish that the Union Defendants breached their duty of fair representation. This is a correct statement of the law, but they base it on the claim for breach of duty of fair representation being time-barred. And since his claim is dismissed without prejudice because it is not yet clear that he cannot allege facts to support tolling the statute of limitations, the court does not reach this argument at this time.

7

governed by federal law if their evaluation is 'inextricably intertwined with consideration of the terms of [a] labor contract.'" Miller v. AT&T Sys., 850 F.2d 543, 545 (9th Cir. 1988) (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985)). "Of course, not every dispute involving provisions of a collective bargaining agreement is preempted by the LMRA. When the meaning of particular contract terms is not disputed, the fact that a collective bargaining agreement will have to be consulted for information will not result in § 301 preemption." Firestone v. Southern California Gas Co., 219 F.3d 1063, 1065 (9th Cir. 2000); see also Beals v. Kiewitt Pacific Co., Inc., 114 F.3d 892, 895 (9th Cir. 1997) (stating that a claim is not preempted if it merely requires reference to, as opposed to interpretation of, the provisions of a collective bargaining agreement); Jimeno v. Mobil Oil Corp., 66 F.3d 1514, 1522-23 (1995) (the "LMRA does not . . . preempt the application of a state law remedy when the 'factual inquiry [under the state law] does not turn on the meaning of any provision of a collective bargaining agreement.'") (quoting Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 407 (1988)); Ramirez v. Fox Television Station, Inc., 998 F.2d 743, 749 (9th Cir. 1993) ("[S]tate-law causes of action are preempted if they are either based upon a collective-bargaining agreement or dependent upon an interpretation of the agreement.").

As they did with respect to his breach of contract and breach of duty of fair representation claims, the Aramark Defendants argue that Sullivan's age discrimination and retaliation claims are preempted by § 301 of the LMRA.

        i.      Age Discrimination

The California Fair Employment and Housing Act makes it an unlawful for an employer, because of "age [over 40 years old], . . . to discharge [a] person from employment . . . or to discriminate against [a] person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't Code § 12940(a); see also Cal. Gov't Code § 12926(b). Sullivan, who is over the age of 40, alleges that Aramark's "stated basis" for his termination is pretextual. Complaint ¶ 49. "The real reasons . . . Aramark has targeted [him are]: (1) he insisted on due process under the Master Agreement, and could not be forced to waive [sic]; (2) Aramark seeks to replace senior RSRs with younger, cheaper personnel, and [(3)] Aramark seeks to defray its substantially larger costs and pay, benefits, health care, and retirement benefits which cost Aramark substantially more

for older workers, including [him]." Id.

The Aramark Defendants argue that these allegations make clear that his claim "must be tested against the terms of the [Master Agreement], including, for example, the provisions regarding Termination of Employment; Reprimands and Warnings; and Misconduct (Article 27) and Grievances and Arbitration (Article 28)," Motion at 7-8, and this Court agrees. Although it is true that merely because a collective bargaining agreement has a section regarding the discipline and termination of employees it does not mean that all claims disputing a termination will require interpretation of the agreement's terms[5], Sullivan alleges that he was discriminated against because he insisted on "due process under the Master Agreement." Complaint ¶ 49. To determine what "due process" he may have been entitled to but was not given requires this Court to interpret the agreement. Accordingly, Sullivan's age discrimination claim against Aramark is dismissed without prejudice.

### ii.  Retaliation

As for his two retaliation claims, the Aramark Defendants again argue that Sullivan's allegations make clear that his claims require the Court to interpret the Master Agreement. They point out that Sullivan alleges in his third cause of action that "ARAMARK's violation of contract terms, violation of the FEHA, and unethical conduct is in whole or substantial part in retaliation for plaintiff's protected union activity." Complaint ¶ 54. He also alleges in his fourth cause of action that the Aramark Defendants retaliated against him for reporting health and safety issues by reassigning one of his routes to another driver in violation of § 5.3 of the Master Agreement. Id. ¶ 57.

Sullivan, on the other hand, contends that his retaliation claims have nothing to do the Master Agreement. Opp'n at 4. In support, he cites decisions where either the Supreme Court or the

---

[5] See Miller, 850 F.2d at 548 ("A claim challenging a discharge need not be preempted merely because certain aspects of the collective bargaining agreement govern work assignments and discharges."); Chan v. Albertson's, Inc., No. C02-01157 CRB, 2002 WL 981912 (N.D. Cal. May 1, 2002) ("[Plaintiff's] claim is that defendant discriminated against him in its discipline decisions, that is, that it disciplined him for conduct that it did not discipline others. Such a claim does not require interpretation of the CBA, but rather resolution of the factual issues of what conduct plaintiff engaged in, whether other employees had engaged in the same conduct and not been disciplined, and the reason for defendant's disparate treatment of plaintiff.").

9

Ninth Circuit found various plaintiffs' discrimination or retaliation claims not to be preempted. See Lingle, 486 U.S. at 407; Cramer v. Consolidated Freightways, Inc., 255 F.3d 683, 695 (9th Cir. 2001); Jimeno, 66 F.3d at 1528; Miller, 850 F.2d at 550. But in those cases – and unlike in this one – the plaintiffs' claims were not based upon the defendants' alleged violation of their duties under the applicable collective bargaining agreements. See Lingle, 486 U.S. at 407 (plaintiff's prima facie showing and defendant's showing of a non-retaliatory reason for termination in that case were "purely factual" inquiries and "[did] not turn on the meaning of any provision of a collective-bargaining agreement."); Cramer, 255 F.3d at 693-94 ("The plaintiffs based their claims on the protections afforded them by California state law, without any reference to expectations or duties created by the CBA. Their claims are neither founded directly upon rights conferred in the CBA nor 'substantially dependent upon' interpretation of the CBA terms.") (quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 394 (1987)); Jimeno, 66 F.3d at 1524 (explaining that "[t]he crucial inquiry is whether the CBA must serve as the measuring rod in determining whether [defendant] acted reasonably in its blanket policy of refusing to make any adjustments to employee workload or work environment in order to those with work restrictions" and finding that it did not); Miller, 850 F.2d at 549 ("This case does not require . . . consideration of the terms of the CBA. Oregon has construed its discrimination statute so that it relies on standards of discriminatory firings that are independent of any standard of reasonable treatment set forth in the CBA.").

For this reason, this case is more analogous to Audette v. Int'l Longshoremen's and Warehousemen's Union, 195 F.3d 1107 (9th Cir. 1999). There, union members alleged a breach of a settlement agreement by their union and employer was done in retaliation for a prior lawsuit and based on sex discrimination. Audette, 195 F.3d at 1113. The settlement agreement provided that the defendants did not have to perform certain terms of the agreement if they had "non-discriminatory, legitimate, business justification" for not doing so. Id. at 1112. The justifications, however, were provided by the applicable collective bargaining agreement, and so the union members' claims were preempted. Id. at 1112-13.

While it is true that a claim that seeks to vindicate "non-negotiable state-law rights" is not preempted by § 301, Allis-Chalmers, 471 U.S. at 213, Sullivan's claims as alleged seek to vindicate

more than just his protected union activity or his reporting of health and safety violations.[6] Specifically, with respect to Sullivan's third cause of action, the Court would need to determine whether the Aramark Defendants' alleged "violation of contract terms" constitutes retaliation. See Complaint ¶ 54. And, with respect to his fourth cause of action, the Court would need to determine whether the Aramark Defendants' reassignment of Sullivan's route violated the Master Agreement. See Complaint ¶ 57. Accordingly, Sullivan's third and fourth causes of action against Aramark are dismissed without prejudice.[7]

### B. Against Pacheco

With respect to his second cause of action, Sullivan concedes that Pacheco may not be held individually liable for age discrimination. Opp'n at 5; see Reno v. Baird, 18 Cal.4th 640, 663-64 (1998) (holding that individual supervisors are not liable for employment discrimination under FEHA). His age discrimination claim against Pacheco is dismissed with prejudice.

With respect to his third cause of action, Sullivan did not respond to the Aramark Defendants' argument that Pacheco may not be individually liable for wrongful termination, but on this point, it is not clear whether Reno's holding extends to retaliation claims. See Harris v. United Parcel Service, Inc., No. C-08-0315 MMC, 2008 WL 506141, at *1 (N.D. Cal. Feb. 22, 2008) (noting that there is "no settled rule precluding a finding, under FEHA, of personal liability against a supervisor for retaliation") (citing Winarto v. Toshiba America Electronics Components, Inc., 274 F.3d 1276, 1288 (9th Cir. 2001) (holding individual supervisor may be held personally liable for retaliation under FEHA)); Reno, 18 Cal.4th at 663; Jones v. Lodge at Torrey Pines P'ship, 147 Cal.App.4th 475, 504, 54 Cal.Rptr.3d 379 (2007) (holding individual supervisor can be held liable

---

[6] See Allis-Chalmers, 471 U.S. at 212 ("§ 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law."); see also Galvez v. Kuhn, 933 F.2d 773, 777 (9th Cir. 1991) (noting that a state prohibition of illegal conduct applies regardless of the terms of a particular contract).

[7] Again, the Aramark Defendants argue for dismissal with prejudice because, if the claims are preempted under § 301 of the LMRA, they are also barred by the 6-month statute of limitations. But as the Court mentioned above, it is not yet clear that Sullivan cannot allege facts to support tolling of the statute of limitations.

11

for retaliation under FEHA)).[8] And with respect to his fourth cause of action, Sullivan did not respond to the Aramark Defendants' argument that he failed to allege exhaustion of administrative remedies in relation to his cause of action for wrongful termination in violation of Cal. Labor Code § 1102.5. See Neveau v. City of Fresno, 392 F.Supp.2d 1159, 1180 (E.D. Cal. 2005) ("The California Supreme Court has recently held that a litigant seeking damages under § 1102.5 is required to exhaust administrative remedies before the Labor Commissioner prior to bringing suit.") (citing Campbell v. Regents of the Univ. of Cal., 35 Cal.4th 311, 333-4 (2005) ("We conclude that absent a clear indication of legislative intent, we should refrain from inferring a statutory exemption from our settled rule requiring exhaustion of administrative remedies.")).

Accordingly, Sullivan's retaliation claims are dismissed. But because there is no clear rule about individual liability and the Court cannot say that Sullivan will not be able to allege exhaustion of his administrative remedies, they are dismissed without prejudice.

3. Plaintiff's Fifth Cause of Action for Fraud

Sullivan's fifth cause of action alleges fraud against the Aramark Defendants because Pacheco allegedly forged a note signed by a restaurant employee, which they then used "in their effort to uphold [their] firing of [him]." Complaint ¶¶ 23, 63. To prove fraud under California law, Sullivan must establish: (1) misrepresentation, (2) scienter or knowledge of its falsity, (3) intent to induce reliance (intent to defraud), (4) actual, detrimental, and justifiable reliance, and (5) resulting damage. Hinesley v. Oakshade Town Ctr., 135 Cal. App.4th 289, 294 (2005). As the Aramark Defendants point out, and as Sullivan concedes, Sullivan did not allege reliance. Motion at 10; Opp'n at 5. Thus, his fraud claim against them is dismissed without prejudice.[9]

4. Plaintiff's Sixth Cause of Action for Defamation

Sullivan's sixth cause of action alleges that the Aramark Defendants defamed him when Pacheco told a prospective employer that Sullivan was "unhireable," "not eligible for rehire" and a

---

[8] In their motion, the Aramark Defendants erroneously cited Jones v. Lodge at Torrey Pines P'ship, 54 Cal.Rptr.3d 379 (2007), for the point that Reno's holding was extended to retaliation claims.

[9] The Aramark Defendants argue that leave to amend would be futile because he "cannot logically re-plead this claim to state that he relied on an allegedly forged note signed by the witness." Docket No. 23 ("Reply") at 7. While they ultimately may be right (indeed, Sullivan conceded at oral argument that it is "doubtful" he can), the Court cannot foreclose the possibility at this time.

1  "bad seed." Complaint ¶ 68. The Aramark Defendants offer two defenses: (1) that the allegedly

2  defamatory statements are opinion; and (2) are privileged under California law. Motion at 11-12.

3        Taking the second defense first, although Sullivan did not address the Aramark Defendants'

4  argument that the statements were protected by privilege, his claim survives on this ground, at least

5  at the pleading stage. California Civil Code § 47(c), provides a conditional privilege clearly meant

6  to allow former employers to provide comments about job applicants to potential employers. It

7  states in relevant part:

> In a communication, <u>without malice</u>, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information. This subdivision applies to and includes a communication concerning the job performance or qualifications of an applicant for employment, based upon credible evidence, <u>made without malice</u>, by a current or former employer of the applicant to, and upon request of, one whom the employer reasonably believes is a prospective employer of the applicant. This subdivision authorizes a current or former employer, or the employer's agent, to answer whether or not the employer would rehire a current or former employee.

Cal. Civ. Code § 47(c) (emphasis added). However, the conditional privilege only protects non-malicious statements, and Sullivan alleges malice. <u>See</u> Complaint ¶ 70; <u>see also</u> <u>Lee v. Eden Medical Center</u>, 690 F.Supp.2d 1011, 1023 (N.D. Cal. 2010) ("The conditional privilege is defeated by a showing of malice.") (citing <u>Sanborn v. Chronicle Publishing Co.</u>, 18 Cal.3d 406, 413 (1976)). And while "[a] general allegation of malice will not suffice," <u>Robomatic, Inc. v. Vetco Offshore</u>, 225 Cal.App.3d 270, 276 (1990), Sullivan's allegations throughout his complaint meet this standard.

      As for the first defense, statements of opinion are constitutionally protected, but statements of fact do not receive the same protection. <u>Rudnick v. McMillan</u>, 25 Cal.App.4th 1183, 1191 (1994). As the Ninth Circuit has explained, the Supreme Court has rejected a bright-line approach and, instead, has held that "while 'pure' opinions (those that do not imply facts capable of being proven true or false) are protected by the First Amendment, a statement that may imply a false assertion of fact is actionable even if it is couched as a statement of 'opinion.'" <u>Gardner v. Martino</u>, 563 F.3d 981, 986 (9th Cir. 2009) (citing <u>Milkovich v. Lorain Journal Co.</u>, 497 U.S. 1 (1990)). Accordingly, the Ninth Circuit employs a three-part test in determining whether alleged defamatory statements are opinions or assertions of fact: "(1) whether the general tenor of the entire [statement] negates the

13

impression that the defendant [is] asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." Partington v. Bugliosi, 56 F.3d 1147, 1153-60 (9th Cir. 1995) (citing Unelko Corp. v. Rooney, 912 F.2d 1049, 1053 (9th Cir. 1990), cert. denied, 499 U.S. 961 (1991)).

Sullivan argues that "in the context of the entire pleading and history of the case, [Pacheco's statements] imply knowledge by Pacheco that Sullivan was in fact 'unhireable' and really a 'bad seed' after eighteen years of dedicated service to Aramark." Opp'n at 6. The Court is not convinced. Usually, statements of fact for defamation purposes are more specific and more easily provable or disprovable than Pacheco's statements. Compare, e.g., Rotella v. Emeritus Corp., No. C 10-03202 SI, 2010 WL 5141857, at *5 (N.D. Cal. Dec. 13, 2010) (concluding that the allegedly false statements that asserted or strongly implied that plaintiff regularly failed to communicate with staff members, failed to perform other aspects of her job, and/or made degrading or disparaging statements about her regional team, and that the members of her team disliked her and expressed that she was a poor manager could be proven or disproven, and therefore were statements of opinion) with Roe v. Doe, No. C 09-0682 PJH, 2009 WL 1883752, *11 (N.D. Cal. June 30, 2009) ("The allegedly defamatory statements made by [defendant Dallas Mavericks owner Mark] Cuban were phrased in terms of how he 'felt' and what he 'thought.' The statements thus expressed Cuban's belief, not a general truth. For example, Cuban's affirmative response to the question 'Like you feel like you were being deceived?' and his statement 'I thought [Nelson] tried to rip me off' are significant qualifiers because they gave the audience a reason to construe Cuban's statements as opinion rather than fact. Cuban's acknowledgment that he 'felt' deceived by Nelson and that he 'thought' he was being ripped off by Nelson connote subjective judgments, and therefore constitute mere opinion, not factual assertions.").

Under the totality of the circumstances, the general tenor of the comments suggests that Pacheco was providing his opinion. At oral argument, Sullivan suggested that the statements could have implied that he was "corrupt," but there is nothing to support this. Instead, the Court believes

that an average listener would view Pacheco's statements as a hyperbolic characterization. Sullivan's defamation claim is dismissed with prejudice.

## CONCLUSION

Based on the foregoing, the Aramark Defendants' motion to dismiss is GRANTED, and Sullivan's causes of action are dismissed as follows:

1. First cause of action against the Aramark Defendants for breach of contract: Dismissed without prejudice as to Aramark and Pacheco

2. Second cause of action against the Aramark Defendants for age discrimination: Dismissed without prejudice as to Aramark; dismissed with prejudice as to Pacheco

3. Third cause of action against the Aramark Defendants for retaliation: Dismissed without prejudice as to Aramark and Pacheco

4. Fourth cause of action against the Aramark Defendants for retaliation in violation of Cal. Lab. Code §§ 1102.5 and 6310: Dismissed without prejudice as to Aramark and Pacheco

5. Fifth cause of action against the Aramark Defendants for fraud: Dismiss without prejudice as to Aramark and Pacheco

6. Sixth cause of action against the Aramark Defendants for defamation: Dismissed with prejudice as to Aramark and Pacheco

7. Seventh cause of action against the Union Defendants for breach of duty of fair representation: Dismissed without prejudice as to the Union Defendants.

Sullivan shall file any amended complaint within 30 days from the date of this order.

**IT IS SO ORDERED.**

Dated: August 3, 2011

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C11-02973 HRL** N**otice will be electronically mailed to:**

| | |
|---|---|
| Andrew H. Baker | abaker@beesontayer.com, eaviva@beesontayer.com, lhodge@beesontayer.com |
| Eric Meckley | emeckley@morganlewis.com, mary.gonzalez@morganlewis.com |
| Kathryn M. Dancisak | kdancisak@morganlewis.com, kgregory@morganlewis.com |
| Larry Alan Peterson | lapetersn@gmail.com |

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**